JOURNAL ENTRY and OPINION
{¶ 1} Plaintiffs-appellants, Visconsi-Royalton, Limited and Aveni-Miller Ltd., LLC ("appellants"), appeal from the trial court's final judgment of June 23, 2003. Appellants are appealing the trial court's granting of defendant-appellee's motion for summary judgment; its interim order entered October 21, 2002, declaring the zoning ordinances of the city of Strongsville as applied to appellants' property substantially advance the public health, safety, morals and general welfare; and from certain evidentiary rulings of the trial court. Having reviewed the arguments of the parties and the pertinent law, we hereby reverse and remand to the lower court for proceedings consistent with this opinion.
 I. Background {¶ 2} According to the facts in the case sub judice, appellants are the owners of 48 acres of land in Strongsville, Ohio, on State Route 82, Royalton Road, west of Interstate 71 (hereinafter referred to as the "Visconsi property"). The property is presently zoned for three uses: Approximately five acres of the property are zoned as motorist service district, nine acres are zoned as office building district, and the remaining 34 acres are zoned R-1-75 single family.[1] The appellants brought this action challenging the constitutionality of the zoning on the Visconsi property. Appellants brought this appeal after they were unsuccessful in persuading city council to zone the property such that appellants would be permitted to construct two hotels, three restaurants, offices, a theater and compatible retail facilities. Appellants requested a declaration from the Cuyahoga County Common Pleas Court that the zoning in place on the Visconsi property was unconstitutional. Appellants stated that it was arbitrary, capricious, unreasonable and did not substantially advance the public health, safety, welfare and morals of the community and rendered the property economically unfeasible for development.
 {¶ 3} After two years of litigation, the parties entered into a settlement agreement. The terms of the agreement state that the 4.5 acres fronting Royalton Road were to be rezoned from motorist service to general business; the 9.3 acres to the north of that parcel from office building to general business; the 17 acres to the west of that parcel from the R-1-75 single-family residential classification to general business; and the 17.4 acres to the north, of which 17.2 acres were zoned in the R-1-75 classification and .1 acre for office building, to public facility with the expectations of maintaining it as a park preferably connected to the Cleveland Metroparks.[2] The settlement was thoroughly reviewed at public meetings convened by both the planning commission and city council. The court's October 17, 2000 entry provided for submission of the matter to the electorate after the approval of the rezoning legislation by the planning commission and its adoption by council. The electorate disapproved the rezoning of the Visconsi property.
 {¶ 4} The settlement entry was abrogated by the electorate and the proceedings resumed before the court of common pleas. Cross-motions for summary judgment were filed by each of the parties. The trial court granted appellants' motion for summary judgment and held that the proscription of the intended use, as set forth in the agreed journal entry, was arbitrary, capricious, unreasonable and contravened the right to property guaranteed to appellants by the Constitution.
 {¶ 5} This court, on appeal, reversed and remanded Visconsi-Royalton, Ltd. v. Strongsville (2001),146 Ohio App.3d 287 (hereinafter referred to as "Visconsi-Royalton
I"). In Visconsi-Royalton I, this court stated that the test for constitutionality of a zoning restriction must focus on theexisting zoning classification as opposed to the proposed use ofthe property. For example, this court of appeals stated inVisconsi-Royalton I:
"In turn, the trial court must analyze the zoning ordinance asto whether appellees satisfied this burden of proof. What we findin this case, however, is that the trial court likewise focusedon the proposed use as opposed to the existing zoningclassification. * * *
"It is not whether the prohibition against the proposed use isarbitrary or unreasonable but whether the existing zoningclassification is so. * * *"
(Emphasis added.)
 {¶ 6} After Visconsi-Royalton I, on remand, the trial court judge recused herself, and her successor ordered the case bifurcated. The case was set for bench trial on the issue of whether the zoning in place on the Visconsi property was unconstitutional. However, the issue of the economic unfeasibility of devoting the property to the uses prescribed by the zoning in place was deferred for later consideration.
 {¶ 7} The case commenced to a bench trial on September 4, 2002. The trial court held that the appellants failed to prove beyond a fair debate that the zoning in place was arbitrary, capricious and unreasonable without substantial relation to the public health, safety, morals, or general welfare.[3] Prior to proceeding to trial on the fourth count of the complaint relating to the economic unfeasibility of developing the property as zoned, the city moved for summary judgment. The trial court granted the motion, holding that the exclusive remedy for determining that issue was through an action in mandamus to compel appropriation of the property.[4] Appellants now appeal the trial court's decision.
 Manifest Weight of the Evidence {¶ 8} For the sake of clarity and because it is appellants' strongest argument, we shall address appellants' second assignment of error first. Second assignment of error: "The decision of the trial court holding that the plaintiffs had failed to establish beyond fair debate that the land use restrictions imposed by the zoning code of the city on the Visconsi property were unreasonable and did not substantially advance the public health, safety, welfare and morals was contrary to the manifest weight of the evidence."
 {¶ 9} Article IV, Section 3(B)(3) of the Ohio Constitution authorizes appellate courts to assess the weight of the evidence independently of the fact finder. The standard employed, when reviewing a claim based upon the weight of the evidence, is not the same standard to be used when considering a claim based upon the sufficiency of the evidence. The United States Supreme Court recognized these distinctions in Tibbs v. Florida (1982),457 U.S. 31, where the Court held that, unlike a reversal based upon the insufficiency of the evidence, an appellate court's disagreement with the jurors' weighing of the evidence does not require special deference accorded verdicts of acquittal, i.e., invocation of the double jeopardy clause as a bar to relitigation. Id. at 43.
 {¶ 10} Upon application of the standards enunciated inTibbs, the court, in State v. Martin (1983),20 Ohio App.3d 172, has set forth the proper test to be utilized when addressing the issue of manifest weight of the evidence. The Martin court stated:
"There being sufficient evidence to support the conviction asa matter of law, we next consider the claim that the judgment wasagainst the manifest weight of the evidence. Here, the test ismuch broader. The court, reviewing the entire record, weighs theevidence and all reasonable inferences, considers the credibilityof the witnesses and determines whether in resolving conflicts inthe evidence, the jury clearly lost its way and created such amanifest miscarriage of justice that the conviction must bereversed and a new trial ordered."
 {¶ 11} In determining whether a ruling is against the manifest weight of the evidence, a reviewing court weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the fact finder clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. State v. Thompkins (1997),78 Ohio St.3d 380, 387. In determining whether a judgment of conviction is against the manifest weight of the evidence, this court, in State v. Wilson, Cuyahoga App. Nos. 64442, 64443, 1994-Ohio-2508, adopted the guidelines set forth in State v.Mattison (1985), 23 Ohio App.3d 10. These factors, which this court noted are in no way exhaustive, include:
a. knowledge that even a reviewing court is not required to accept the incredible as true;
2) whether evidence is uncontradicted;
3) whether a witness was impeached;
4) attention to what was not proved;
5) the certainty of the evidence;
6) the reliability of the evidence;
7) the extent to which a witness may have a personal interest to advance or defend their testimony; and
8) the extent to which the evidence is vague, uncertain, conflicting or fragmentary.
 {¶ 12} Judgments that are supported by competent, credible evidence going to the essential elements of the case will not be reversed as being against the manifest weight of the evidence.Bella Vista Group Inc. v. City of Strongsville, Cuyahoga App. No. 80832, 2002-Ohio-4572. We find that the judgments of the trial court were not supported by competent, credible evidence going to the essential elements of the case.
 {¶ 13} The trial court lost its way, in large part because it dismissed the significance of the city of Strongsville's comprehensive plan on notions of caveat emptor. We do not find the trial court's original statement that "the plaintiffs knew what they were getting into when they purchased this property" to be entirely accurate.[5] We are fairly certain that the plaintiffs did not have any idea of what they were getting into when they purchased this property. If we were to allow caveat emptor to become a significant factor in zoning, it would result in an unwelcome chilling effect on the marketability of land The typical purchaser of land does not desire or anticipate significant zoning complications when purchasing property. Nor does he or she commonly have the time or resources to adequately resolve such a situation. We do not find merit in the trial court's caveat emptor rationale.
 {¶ 14} Furthermore, we find that the lower court again lost its way when it principally relied on traffic and aesthetic evidence that related to the proposed use of the land as opposed to the existing zoning classification. Finally, the trial court erred in its consideration of the economic viability of the 34 acres currently zoned for single family use because it gave little or no weight to the fact that appellants' property is isolated from the Ledgewood Development by the absence of street connections.
 The Plan {¶ 15} The city of Strongsville has enacted enabling legislation mandating that the zoning in the city follow the objectives of the comprehensive plan. Section 1240.02 of the city ordinances provides in relevant part:
"1240.02 Purpose and Intent
 "The purpose of this Zoning Code and the intent of thelegislative authority in its adoption is to promote and protectto the fullest extent permissible under the powers of theCharter, the public health, safety, convenience, comfort,prosperity and the general welfare of the City * * * and, for theaforesaid purposes, to divide the land within the City intodistricts of such number and dimensions in accordance with theobjectives of the Comprehensive Plan; * * *
"This Zoning Code is intended to achieve, among others, thefollowing objectives:
 "(a) To protect the character and values of residential,institutional, public, business, commercial and manufacturinguses, and to ensure their orderly and beneficial development;* * *
 "(H) To guide the future development of the City so as tobring about the gradual conformity of land and building uses inaccordance with the objectives of the Comprehensive Plan of theCity."[6]
(Emphasis added.)
 {¶ 16} Section 3180-26, General Code (R.C. 519.02), which authorizes a board of trustees of any township to zone areas within such township, requires that such zoning regulations be in accordance with a comprehensive plan. Cassell v. LexingtonTownship Board of Zoning Appeals (1955), 163 Ohio St. 340, syllabus paragraph one. A city's development and implementation of a comprehensive zoning plan has historically been encouraged by both the state legislature and the Ohio Supreme Court. R.C.519.02; Cassell v. Lexington Township Board of Zoning Appeals,
Id.; Belich v. Board of Zoning Appeals, Cuyahoga App. No. 70562, 1997-Ohio-1512.
 {¶ 17} Comprehensive plans do not guarantee zoning; however, they do impact and provide parameters regarding zoning. The specific language in Section 1240.02 of the Strongsville ordinances indicates that the purpose and intent of the zoning code in Strongsville is that zoning will be conducted in accordance with the objectives of the comprehensive plan.
 {¶ 18} Section 1240.02 of the zoning code mandates that the city be divided into zoning districts in accordance with the objectives of the comprehensive plan. The zoning of the Visconsi property is an anomaly in that in following city policies, it should be in a retail district with its neighbors.[7] The Strongsville comprehensive plan is significant because the Strongsville zoning code, unlike that of most other municipalities, specifically provides for zoning in accordance with the objectives of the comprehensive plan.[8] The importance of the plan is reflected by the significant and intense review conducted before it was adopted. The 1990 comprehensive plan was reviewed by the comprehensive plan review committee composed of 12 to 15 people, including Robert Hill. Hill was the city planner and drafter of the plan, whose input the committee respected.[9] The committee spent two-and-a-half years of thorough discussion in formulating the plan.[10] In addition, the committee submitted the plan to the planning commission of the city with the recommendation that it be adopted.[11] The planning commission reviewed the plan and recommended its adoption to council.[12]
 {¶ 19} Council conducted a public hearing and adopted the comprehensive plan on October 7, 1991 by an unanimous vote.[13] In the years following the adoption of the plan, Hill presented various development studies to city officials, including a draft update of the plan in 1996; each document submitted by Hill suggested rezoning of the Visconsi property so as to eliminate the R-1-75 single-family classification of the 34 acres zoned in that category.[14]
 {¶ 20} Appellants utilized past discussions with the city regarding the comprehensive plan in its decision. In 1990, the city adopted the update for the comprehensive plan which projected the abandonment of the R-1-75 single-family residential zoning on the Visconsi property except for the northernmost four acres.[15] The plan reflects the fact that State Route 82 is a seven-lane major arterial east-west roadway, intersecting with the full service ramp of Interstate 71. The plan further contemplates this area becoming devoted to commercial uses and the elimination of the incompatible R-1-75 single-family zoning of the Visconsi property.[16] This increased devotion to commercial use is exactly what has occurred in the immediate area over the last ten-plus years.
 {¶ 21} Furthermore, the configuration of the streets in the Ledgewood Development, as demonstrated by the zoning map and the comprehensive plan, makes no provision for extension of the streets from the Ledgewood Development into the Visconsi property as required by Ordinance No. 1232.02(a) and (b).[17]
Appellants' property is isolated from the Ledgewood Development by the absence of street connections. However, it is connected to the commercial districts through the Howe Road extension contemplated by the city.[18] This is further evidence of the city's intent to connect the property to the commercial districts. In addition, appellants initially provided a benefit to the city when they purchased the property from its previously remiss owner, and thereby removed it from foreclosure.
 {¶ 22} We find the ramifications of the comprehensive plan to be additional illustrations of where the trial court again lost its way. In addition to these ramifications, we find the fact that appellants possessed a great deal of experience and knowledge in real estate to be suggestive.[19] It is doubtful that appellants would have invested millions of dollars in planning, researching, and evaluating this property without some commitment on the city's part that the zoning required would be manageable.
 {¶ 23} In the past, the voter referendum issue has been discussed; however, this is not dispositive of the case. Although the voters may have voted against zoning the property in appellants' favor, the referendum voted on did not and cannot determine the constitutionality of the existing zoning. The court always retains the power to review the result in the context of state and federally guaranteed constitutional principles. Per the dictate of the United States Supreme Court, "[a] citizen's constitutional rights can hardly be infringed simply because a majority of the people choose that it be." Lucas v. TheForty-Fourth General Assembly of the State of Colorado (1964),377 U.S. 713, 736.
 {¶ 24} Similarly, in this court a zoning ordinance upheld by referendum is subject to the same constitutional test as an ordinance enacted by a municipality. R.A.D. Development Co.,Inc. v. City of Brecksville, Cuyahoga App. No. 50472, 1986-Ohio-6594; see, also, Osborne Bros. Enterprises, Inc. v.City of Mentor (Apr. 29, 1983), Lake App. No. 9-015. Regulation of land, however, must
 {¶ 25} be based upon reason, not on the whim of the people.Forest City Enterprises v. City of Eastlake (1975),41 Ohio St.2d 187.
 {¶ 26} Moreover, we agree with the trial court when it stated in its January 12, 2001 judgment entry that "a popular referendum of zoning matters is subject to judicial scrutiny, just as are legislative enactments by a city council."[20] The trial court stated:
"The Court also believes that the parties have fully briefedthis matter, apprising it of all relevant facts and applicablelegal analysis, such that its enforcement of the Agreed JudgmentEntry is not a departure from the Ohio Supreme Court's holding inUnion Oil Co. of California v. City of Worthington,supra.[21] It concurs with the argument made by the city ofStrongsville that the final imposition of land use restrictionsmay be a choice of reasonable alternatives best left to thelegislative body; however, this choice was in fact duly made bythe Strongsville city council, who gave careful consideration tothe Agreed Judgment Entry before its adoption, with theconcurrence of the Strongsville Planning Commission and otherqualified city officials. Both parties thoroughly considered theunderlying evaluation given to the Agreed Judgment Entry.Referral of the matter yet again to the legislative body forre-submission to the voters is not necessary. Such conduct couldlead to a never-ending legal battle in which no informedresolution could ever be reasonably achieved."
(Emphasis added.)
 Traffic and Aesthetics {¶ 27} The law in this case was discussed in detail in the previous appeal and the trial judge is bound to consider only evidence relating to the current use. The previous appeal mandated that the judge look at the current use rather than the proposed use; however, the trial court relied on points that have to do with the proposed use. The trial court did this in at least two pivotal instances: traffic and aesthetics.
 {¶ 28} For example, in the trial judge's October 21, 2002 decision, the trial court judge stated: "Based on the above testimony, there is no doubt that there will be aesthetic changes to the community and an increase in traffic with theproposed development. It is debatable whether the increased traffic will have an adverse effect on the safety of this community * * *." (Emphasis added.) In addition, the judge focused on the proposed use rather than the current use again when she stated: "Frank Mehwald and Robert Wasacz both testified that if Plaintiff developed the property with commercial buildings it would change the aesthetics of their residential property. Specifically, in order for Plaintiff to build commercial buildings, Plaintiff would have to cut down many trees and fill in at least one of the two streams and a large ravine. * * * Moreover, if a commercial development were built, the residents would have light beaming on their property at night."
 {¶ 29} As previously mentioned, our court addressed this issue in Visconsi-Royalton I, when it stated the following:
"In turn, the trial court must analyze the zoning ordinance asto whether appellees satisfied this burden of proof. What we findin this case, however, is that the trial court likewise focusedon the proposed use as opposed to the existing zoningclassification. Reiterating, the trial court opined:
 * * * that the prohibition of the use of [appellees']property for General Business purposes as enunciated in theAgreed Judgment Entry is arbitrary, capricious, unreasonable andcontravenes the right to property * * *.
 It is not whether the prohibition against the proposed use isarbitrary or unreasonable but whether the existing zoningclassification is so. Consequently, genuine issues of materialfact remain as to whether the existing zoning classification isarbitrary, unreasonable and without substantial relation to thepublic health, safety, morals or general welfare of thecommunity. The trial court, therefore, erred when it grantedappellees' motion for summary judgment."
(Emphasis added.)
 {¶ 30} The comprehensive plan, the planners who testified, the lack of a street connection, the trial judge's decision, the traffic, the aesthetics, and the additional evidence presented in this case all support appellants' second assignment of error.
 Property Differences {¶ 31} In addition to the evidence above, we find appellee's reliance on Bella Vista Group, Inc. v. City of Strongsville,
Cuyahoga App. No. 80832, 2002-Ohio-4434, to be misplaced. The case at bar involves an entirely different situation. The property in the case sub judice is different in size and character than the property in Bella Vista. Bella Vista
involved 17 bowling alley-shaped parcels that were all zoned for and developed as single-family residential homes, except one vacant wooded lot. The 17 wooded lots were located on a total of approximately 30 acres. Neighborhoods of occupied single-family residential dwellings lie to the east and occupied multi-family dwellings are immediately south of the properties at issue. Although there is commercial development to the north of the properties and to the west along Pearl Road, the area just west of Pearl Road is primarily composed of single-family residential dwellings. The property in the case sub judice is far larger than the property involved in Bella Vista. In addition, the property in question has different characteristics and involves different surrounding parcels than Bella Vista. The neighborhood in the case at bar has changed more dramatically than the neighborhood did in Bella Vista. The Southpark Center mall and surrounding retail stores, as well as the freeway, have all contributed to this expedient and dramatic change.
 {¶ 32} The evidence above demonstrates that the trial court erred in its decision regarding the zoning code and the Visconsi property. We find the trial court's decision to be contrary to the manifest weight of the evidence.
 {¶ 33} Appellants' second assignment of error is sustained.
 VI. {¶ 34} Appellants' first assignment of error states: "The trial court erred in finding for the defendant city of Strongsville on the constitutional issue of the rational support for the zoning in place on the Visconsi property holding that plaintiffs had failed to prove beyond fair debate that the land use restrictions imposed by the zoning code of the city on the Visconsi property were unreasonable and did not substantially advance the public health, safety, welfare and morals."
 {¶ 35} Appellants' third assignment of error states: "The trial court erred in granting defendant's motion for summary judgment holding that mandamus compelling appropriation was the sole remedy in which a land owner may establish that a land use regulation had denied economically viable use of the land and holding that a civil action requesting damages is improper."
 {¶ 36} Based on our disposition of the second assignment of error, the issues raised in appellants' first and third assignments of error are moot. App.R. 12(A)(1)(c).
 {¶ 37} The case is hereby reversed and remanded. The trial court is hereby directed to determine whether the R-1-75 single-family zoning of the Visconsi property denies the owners economically viable use of the land In addition, if the trial court finds a denial of the economically viable use of the land, it is to permit the owners to introduce evidence of the compensation to which they are entitled by reason of the deprivation caused by their inability to devote the property to profitable use.
 {¶ 38} Judgment is reversed and remanded.
This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.
It is, therefore, considered that said appellants recover of said appellee costs herein.
It is ordered that a special mandate be sent to the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
[1] Appellants' Ex. 3, Appellee's Ex. F-4.
[2] See agreed judgment entry dated October 17, 2000.
[3] Trial court's decision, October 18, 2002.
[4] Journal entry, June 19, 2003.
[5] Trial court's decision, October 21, 2002, p. 4.
[6] Ord. 1978-165; passed October 16, 1978.
[7] Tr. 112.
[8] Tr. 193-194, 755-756, 831.
[9] Tr. 693, 707-709, 832.
[10] Tr. 708, 726.
[11] Tr. 726.
[12] Tr. 727-728.
[13] Tr. 729-730.
[14] Tr. 121, 124, 125, 127, 129-130, 759, 762, 833, 835, 840, 841, 851, 868.
[15] Tr. 95.
[16] Tr. 103-111.
[17] Tr. 837, 863.
[18] Tr. 834-835, 843.
[19] This is stated in the briefs and has been alluded to on several occasions. Even in situations that did not conclude in appellants' favor, it was never stated that appellants lacked knowledge in real estate. One example of this would include when the trial judge stated in her decision that "plaintiffs knew what they were getting into when they purchased the property." October 21, 2002, p. 4. It is undisputed in the record that appellants possess a high knowledge in real estate.
[20] See January 12, 2001 judgment entry regarding declaratory judgment in the city of Strongsville. Vol. 2547, pgs. 529-537.
[21] Union Oil Co. of California v. City of Worthington
(1980), 62 Ohio St.2d 263.